Case number 201734 Anthony Daunt et al. v. Jocelyn Benson et al. Argument not to exceed 15 minutes per side. Mr. Bursch, you may proceed for the appellant. Thank you. Good morning, your honors. John Bursch on behalf of the Daunt plaintiffs. I have reserved five minutes for rebuttal. May it please the court. With full appreciation for the challenge we face in asking this panel to change its mind from the preliminary injunction ruling, I want to press two primary points this morning. First, the unconstitutional conditions framework should apply to this case, not Anderson verdict, because proposal 18-2 imposes restrictions on a government position, not election mechanics. And second, those restrictions violate First Amendment rights because they go much further than any restrictions than any court has ever upheld. And I'll begin with a threshold issue, which, of course, is law of the case. Howe v. City of Akron did say that a preliminary injunction decision on the same record and with the benefit of full merits briefing and argument is law of the case. But the law of the case doctrine is not a constraint on judicial power. It is a discretionary rule that promotes efficiency. And that's why Howe also said that the law of the case can be overcome by compelling reasons, and there are compelling reasons to reach a different result in this appeal. And I'll start with my second point, that the restrictions in the Michigan law go much further than any court has ever approved. Everyone agrees that the government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests. And as this panel noted last time on page 12 of its opinion, several of the eligibility criteria here clearly correspond to activities protected by the First Amendment. And there are two features of these criteria that merit close scrutiny. First is the prohibition on relatives, and second is the six-year look-back. And in combination, it's the strictest anywhere in the nation. First, the family prohibition is unprecedented. Your opinion in the- Can I say something about the look-back issue? Yes. So, I mean, in the term limits context, that has look-back aspect to it as well, right? If you've served for, say, two terms and you can't serve a third. Do you distinguish those cases on the basis that this also then has this family component to it or on something else? Yeah, what we're pressing is that it's the combination of those two things, that you can be punished by the state not only for conduct that you've engaged in, but by conduct of a relative whose political interests you may or may not share. You know, in the case of a separated or an ex-spouse, it may not even be someone that you're living with anymore. So, it's quite different. And so, on the family member point, I guess maybe the most on-point case is Nevada Commission. Maybe you think it's something else, but in that case, the court did uphold, albeit in the legislative context, where maybe you could more directly benefit a relative or family member. But I take it that's the best precedent on the other side. The best precedent on the other side, to be sure. And let me explain why it's not even to what's happening here. In Kerrigan, it was dealing with politicians who had an actual conflict of interest, and it prohibited them from participating in a legislative debate. And here, it's not an actual conflict. It's assumed conflicts based on activities, and those lines are being drawn in over- and under-inclusive ways. It's stereotyped conflicts. So, the analog to Kerrigan would be if the Michigan law prohibited a sitting legislator or a sitting legislator's mother from participating on the commission, we would have no problem with that. But when you're talking about someone whose mother is a mail clerk for a non-partisan registered lobbyist, and then you just impute a conflict of interest in a situation like that, that doesn't look anything like the Nevada Commission case. Not only is the familial relationship attenuated, but you also can't identify an actual conflict. You're simply using proxies. It would be like if you had a, instead of having a 70-year age limit, that you prohibited someone based on the fact that they play bingo, or that their spouse is an AARP member. Those are the kinds of things that don't speak to actual conflicts at all. And if the Michigan statute was limited to actual conflicts like Kerrigan, then I don't think that we would be here. So, are you saying then that the appearance of conflicts cannot be a criteria that could be used? Well, I'm not seeing any cases in the opinion from the first round that relied on appearances of conflicts. You just made the statement that it could only prohibit actual conflicts. And I just wanted to clarify that that was your rule that you would impose here, that only actual conflicts of interest could be a basis for prohibiting someone from being on the commission. I don't need to go quite that far, because here, the attenuation between the years and the family members is so far that we're even past the appearance. Again, the mother of a male clerk working for a nonpartisan registered lobbyist, there's not even an appearance of a conflict of interest there. So, you don't need to decide whether an appearance of conflict of interest would be an appropriate criteria, because we've gone past that. Let me ask you this. Doesn't the amendment have a specific severability clause? It does, yes. Well, even if at worst you were right, that wouldn't strike down the whole redistricting plan, would it? Why wouldn't we just sever your mother of the male clerk? At a minimum, I think you should do that. But as we explained in the briefing, even when you have a severability clause in a constitutional provision, you would still have to look to decide what the voters would have wanted at the time, or what they would have done at the time that they were voting on the proposal. And here, it's not at all clear that if you stripped out any aspects of the proposal the way that it was written, that the voters would have still voted in favor of it. In fact, the presumption is that- I don't know. Didn't they get over 60% vote in favor of this then? Well, sure they did. They voted for the exact proposal that was put in front of them. I don't know whether 60% would have supported it if you stripped out any of the provisions. Well, I mean, my own thought is that, look, the overwhelming thought, the real focus of the whole thing is we want nonpartisan commission drawing the districts rather than gerrymandering. And the eligibility criteria of politicians, I would assume, was a relatively minor aspect. Do you have any proof in the record that shows to the contrary? Well, see, that's just the thing, Judge Gilman. There's no proof either way, because no one has gone back and surveyed all the voters to determine what were the points of the proposal that motivated them to vote that way. That's why the Michigan Supreme Court, in its own evaluation of severability, has said that courts will often presume that ballot provisions are not severable. Really, the burden would be on the state to prove that they could still get to 51%, even if you stripped out some provisions of this. It may be that, to some people, the familial prohibitions and the six-year look-back were very important. And if you took those away, you might not get to 60%. By the way, in the look-back, the Supreme Court has said that a two-year waiting period is de minimis, right? It has, yes. Do you have any authority that six years, though, is way beyond the bail? Well, a couple of points that I want to make about the two-year look-back. First, it was de minimis to someone who had an actual conflict, because they already had an office, in that case, a justice of the peace. And the state had an interest in keeping them fully wedded to that position and interested in fulfilling their duties until the end of it. So it wasn't like Michigan's, where there was just an unrelated-to-the-job look-back. And what's more, I haven't been able to find cases that go back more than two years. And I think the reason for that is explained in that opinion, the Clements opinion in Section 5. The reason that they allowed it there is because you were still allowed to participate in political campaigns. The waiting period did not affect your ability to interact with the opposite. Do you know, by the way, why six years was picked in this amendment? I do not know. I'm going to ask the state if they know. Yeah, or maybe the interveners. With the limited time I have left, I want to address one last point in the concurrence of the opinion from the first time, and that's this notion of deference to the way that the state establishes its election mechanisms and procedures. We full-heartedly endorse that proposition. But Judge Raylor, the examples that you pointed to there, voter ID, convention system for selecting judicial nominees, absentee ballots, vote counting methods, a number of early voting days, those are all procedural mechanisms that apply equally to everybody that did not target First Amendment conduct. None of them punished someone because of their relatives, associations, and employment as long as five years and 11 1⁄2 months ago. So to say that deference to the way the state wants to organize its system is a governing principle, we wholeheartedly endorse that in all of those concepts. But when you're picking and choosing and drawing lines and saying that some First Amendment activities are excluded and some are in and we're going to do it based on stereotypes rather than actual conflicts, that takes us far afield from the types of cases that you noted in your concurrence that are worthy of deference. And you would say raises the bar in terms of the level of scrutiny we should apply? Absolutely, no question. Because when you're talking about targeting someone because of the First Amendment activities that they engage in, all of a sudden we're talking strict scrutiny, possibly the cases we cite at pages 31 to 32 of our principal brief support that, or at a minimum exacting scrutiny under Janus and National Treasury Employees Union on pages 32 to 33. It's not simply a matter of establishing a neutral mechanism that applies to everyone, something where Anderson-Burdick would apply, but rather it applies to someone's First Amendment protected activities. And this court noted that in its opening opinion, that these eligibility criteria clearly correspond to activities protected by the First Amendment. And I see that I'm out of time, so unless there are any other questions, I'll pause there. Mr. Bursch, I apologize, my computer just froze up, so I unfortunately missed the last 20 seconds, but I did have one other area I wanted to ask you about, and I'm hoping my connection holds. This is kind of a funny case because our cards are on the table a little bit. You've already seen one opinion from this panel, which gives you at least some insight into what we're thinking. And so my view on Anderson-Burdick is pretty well stated. But another reason why Anderson-Burdick might not apply or might not lead to the result that the district court entered is that typically the compelling interest and the burden analysis would turn on some factual consideration. In other words, most of the Anderson-Burdick cases are decided at the summary judgment stage, not the motion to dismiss stage. And so I could see why discovery could help inform, if you were going to go down that road, I could see why discovery should at least help inform our analysis. And I thought the briefs across the board were excellent, so thank you to all the parties. But one thing, Mr. Bursch, your brief, I was wondering, maybe it could have amplified a little more, is what types of if your case proceeded past the motion to dismiss and summary judgment, assuming we're applying an Anderson-Burdick analysis, were there specific things that you wanted to probe into regarding compelling interest and burdens that places on individuals in Michigan? And your point, which we agree with, applies not only to the Anderson-Burdick test, but also to the law of the case doctrine, because we haven't had to develop, had a chance to develop a record, which would take us outside the scope of how versus city. What are the things you wanted to develop? Well, specifically, we would develop the testimony of our own clients. I mean, we certainly alleged in the complaint things that were adequate to show that their First Amendment interests were impaired, sufficient to survive a motion to dismiss. The state kind of gives the back of the hand to that, and then recharacterizes those things by talking about our plaintiff's motives and things like that. Well, we would take their depositions and put them under oath and allow them to talk about why their interests are impaired, the kinds of activities that they're prohibited. You're saying you would take your own client's depositions, is that what you're saying? Yeah, so that we could further amplify for a summary judgment record, as opposed to a motion to dismiss on the pleadings that the interests that are impaired. Am I correct in remembering that at the preliminary injunction stage that you and the merits hearing be consolidated because it was a question of law that was involved in this case? It was, and because we were actually moving forward on the assumption that we could still get an injunction before the commission was impaneled, and it was important to us to get that heard. You conceded at that point that enough facts had been developed at the preliminary injunction stage to warrant a merits ruling. To warrant a merits ruling in our favor, but not that the factual record was so developed, it would entitle the state to have dismissal. That's an entirely different question. One way street there. But that happens all the time when you're talking about dispositive motions, that one party would say the facts are sufficiently developed that I am entitled to a victory as a matter of law, and at the same time, they're not so sufficiently developed that the other party would not be entitled to judgment as a matter of law. That was our position then and today. Thank you. Absent any further questions, we will move on to the other side. Mr. Grill. Good morning. May it please the court, Eric Grill, Assistant Attorney General, appearing on behalf of Appellee Secretary of State Jessalyn Benson. My argument will be 10 minutes, reserving five minutes for the appellees, voters, and politicians. I think as was phrased earlier, if there's any time remaining at the time that I conclude my comments, I will be able to provide a balance to the other appellee. Yes. Thank you. We were before this court exactly one year ago today, to the day, not just on the same case, but on virtually identical questions. The only difference being whether it was before on a preliminary injunction or here on the state and the defendant's motions to dismiss. The court answered those questions, and it held that the Michigan's Independent Redistricting Commission amendment was constitutional under either the Anderson verdict analysis or the unconstitutional conditions analysis that the plaintiffs urge again now. Nothing has changed between this court's earlier decision and the district court's ruling on our motion to dismiss. So it's a little hard to understand the plaintiff's argument that the district court either should have or could have reached a different conclusion than this court did on the exact same questions. The plaintiffs have argued. And again, this morning that the factual record was not complete and that they should be allowed some discovery to establish the burden and harm imposed on them. The problem with that argument, of course, is that our motion to dismiss, it was not a motion for summary judgment. It was a motion to dismiss under rule 12B6, meaning their allegations were accepted as true. It wasn't a harm that the state assigned to them. It wasn't a burden that we pulled out of thin air. It was the burden they alleged in the complaint. And it was that burden that this court found to be not severe. In seeking to bolster and find new evidence to enhance their burden, they must implicitly acknowledge that the burden they alleged is insufficient. Are you aware, counsel, are you aware of any cases where we've applied Anderson verdict at the motion to dismiss stage and dismiss the case as opposed to what I think we customarily do is at least let the case proceed to summary judgment? I know that there have been several occasions in the last year where we've raised Anderson verdict on a motion to dismiss. I can't, unfortunately, I don't think we prevailed on those, but I don't think it was for the basis that Anderson verdict was not available at the motion to dismiss stage. I don't have it. Maybe Mr. Bursch's point is right that the plaintiff potentially could prevail, but for the state, I mean, a lot of times we have to look at the burden this place is, one, we'd look at the compelling interest and two, we have to look at burden this place is on individuals. And those just sound like fact questions that there would certainly be a fact question if we were disputing it, if we were saying that there was no burden being placed upon them, but that's not the question. The question is that's the burden they're alleging. And the issue is, is that burden as alleged in the complaint severe or not severe? And so to the extent factual development would be necessary, that should have been something that was alleged in the complaint at a minimum. Again, this motion to dismiss was filed concurrently with our response to the motion for a preliminary injunction. It was already filed at the time of the original appeal. If the plaintiffs wanted to allege further elaboration on the burden and the harm imposed on them, they really should have filed a motion to amend their complaint, which they did not. And there was no argument or attempt to either bolster or supplement their response to our motion to dismiss or file a motion for reconsideration saying, hey, district court, you should have allowed or should have considered the additional factual information. So to some extent here, that's the problem with the argument here about the needing more factual detail of the burden is the burden is established. It's in the complaint. This is what they have alleged to be the burden imposed upon them by the amendment. That's it. Is that burden severe? And as this court already determined, it was not. Why does Anderson-Burdick apply to a election? I mean, I actually quibble. Again, our car is on the table a little bit. So I sort of quibble with our use of Anderson-Burdick at all. But it's defensible, I suppose, at least in the context of cases that actually involve the right to vote or access to the ballot. But this is like five steps removed from an actual election. So why should we even be applying Anderson-Burdick here? Your Honor, your criticisms, I think, are well taken. There are legitimate limitations to it, the Anderson-Burdick analysis. And certainly it's not that a catch-all works in every situation type of solution. I do think it works in this case for the reasons that we've identified in the brief and for the reasons the panel decision earlier stated that the underlying rationale is consistent. Your colleagues, your co-counsels really don't push Anderson-Burdick. I think you're the only one who's, you're pushing it a lot more. So I guess I was curious to hear why you're thinking. Well, one of the reasons, obviously, as we stated in our brief, I don't think this case is so attenuated from the administration of elections as the plaintiffs would argue. And I know that there are the cases they pointed to say that, well, actual redistricting determinations have not been reviewed under Anderson-Burdick. Why would the commission here? I think that's a little bit oversimplification because for the we get there is, this is the process and how we do things. And again, for the reasons, the underlying rationale of the Anderson-Burdick analysis, as this court pointed out earlier, applies with equal force here. The ensuring a democratic processes are fair and honest and maintaining the integrity of the democratic system. That's the same type of thing we're dealing with here. I would just say there are a lot of laws that touch on the democratic process a lot. It sort of creates a Pandora's box of what kind of cases where Anderson-Burdick should apply. This seems like a bright line case where we should say it doesn't apply. And let's look at it under unconstitutional conditions or some kind of equal protection analysis. Well, and again, the secretary Benson this year has argued that there are limitations to Anderson-Burdick. I think it was the Saguaro media case where we were arguing that in a matter of a statutory initiative proposals that there's Anderson-Burdick should not apply because there's no first amendment right to initiate legislation. So without a first amendment right, Anderson-Burdick should not apply. So there are. Why don't we move on to the point that your opponent started out with it. This is a fundamental infringement on first amendment rights. And in particular, he's singling out the combination of two things. One, the relative prohibition combined with the time frame. And I think, again, for the reasons this court has already found there, the appearance of bias is just as much a problem as the bias itself. And certainly, you know, the wife of the mail clerk is an extreme example. But obviously, no one really have any serious dispute that the wife of the party chairman would have an interest. So there is certainly or for that matter, the son or daughter of a lobbyist whose interest depends on the districts being drawn in a certain way. So there is that's the appearance of bias that we're seeking to expunge here to the extent that it sounds like you're saying it's over inclusive. I'm not. I don't think it's over inclusive. I think it's inclusive to the extent that's necessary to try to figure out if we're not just going to capture the officials themselves or the people in their positions. And we do want to reach the immediate family members who could be imputed to have similar or at least aligned views. And certainly not every family member sees things the same way. But that's not something that's easy for the public at large to grasp or understand. We're trying to establish a commission whose determinations can be relied upon as impartial and fair. And then certainly things that have the tendency to undercut that and impute the impartiality of the commission are an evil that the amendment is certainly entitled to try to limit or curb. What about the six years? Why is it so long? I'm not in a position to be able to explain why that was written that well. I think that'd be a question for Mr. Gaber. I think he'd be in a position to explain the drafting of that. But I certainly think it's defensible. It's a six year time frame, which is about, I think that's the length of time state senators are in office. So there is a link there to say that that's an appropriate gauge by which to say in this span of time, that's close enough to when you were in office that you may still have some lingering ties or some lingering interest in the outcome of but beyond that, the other point I wanted to reach very quickly on the issue of severability. And again, as Judge Moore pointed out, or sorry, Judge Gilman. Can we stay a little bit more on what we call the First Amendment protection on constitutional conditions? But I guess I asked this question to your friend on the other side, but is your best case Nevada commission in terms of restrictions on family members, limiting one service on their familial relationships? I believe that it is. I'm not aware of another case I can point to the court to this morning on that topic. Yeah, it's a funny, it's a funny area. We, as we said, our early opinion, there's not a lot of cases in this exact context. But, you know, I saw some difference between limiting legislators who can, you know, pretty directly benefit a whole bunch of people through specific actions they take in passing laws or not passing laws, as opposed to this commission, where it's a little more tangential, how it would be potentially helping a whole range of people and why it might benefit a lobbyist, depending upon how a district was drawn. So I'm not sure that that case is, you know, totally persuasive with respect to the pretty dramatic limitations that I would also then, you know, look back to your own opinion on this, that there's an issue here of state sovereignty and in the structuring of our own government and making those types of determinations of who should make the choices and how the districts are drawn. Certainly that that interest still persists. It is something that would form a basis for the drawing of the district, for the drawing of the commission as it is provided for in the amendment. I still do believe that this, the amendment would stand, it should be analyzed under Aniston verdict. And if it isn't, then the under constitutional conditions still survives that review. Or if the court wants to adopt a new one under the idea of state sovereignty, we would still prevail on there. And with respect to the question of severability, what is this state's position on severability, for instance, for instance, of the familial relationship provision, could that provision be severed? But if severability is on the table, the amendment includes an express severability provision. And as we discussed in our brief, Michigan, we don't, the plaintiff's argument about severability depends largely on statutory severability, which isn't applicable here. This is a constitutional amendment. Michigan reads our constitution according to what the ratifiers understood it to be at the time, that's the voters. And you have to assume that they read so having that the amendment expressly includes a severability clause that says anything that doesn't survive the rest of this endures. I think we have to take them at face value on that. Any further questions? Thank you, Mr. Gaber. Good morning, may it please the court, Mark Gaber for Applebee's voters, not politicians. I wanted to start quickly on the issue of whether there are on the facts issue, when a party asks to have the merits consolidated at the PI, it's not a one way ratchet. If you lose that PI, if you lose, you don't get to then say if I want, you know, take back, I'm going to present facts now. And it wasn't just in the district court, it was in this court, when the Don plaintiffs told this court that there were no facts at issue and asked this court to enter an injunction in their favor. With respect to the focus on the relatives, the first point I'd like to make is that it's not clear what First Amendment claim the family members have, there's no political activity that they engaged in that's being conditioned. So it's someone else's political activity. So, so there really is no First Amendment claim from the family members, what they may have is an equal protection claim. But it's the level of scrutiny that is important there. There it's whether or not it violates the equal protection clause to restrict their membership because they have a relation to someone that the state has a judge has a conflict of interest. And that's simply whether or not the state made a rational choice. And as this court found that the state did so. And the Kerrigan case provides support for that. But that really is a different nature of a claim that someone who is themselves engaged in political activity and is bringing a First Amendment claim. I suppose I suppose I mean, I think two things one care again, again, evolve this involve legislators who can can really directly benefit someone through their actions. So people the conflict of interest analysis is pretty well understood there. And then to you tie that with this, as Judge Gilman was asking this six year period that sort of takes this case for a couple ways outside of the Nevada outside of the Nevada case. And there's really no case directly on point here, right, we're supposed to piece together a bunch of precedents to say that Michigan's further encroachment on ability to serve is constitutional, but no court has really gone this far. You know, this is, this is definitely a unique case. But I do think that the court can as it did last year, piece together several lines of precedent, you know, seven year durational residency requirement was upheld by the Supreme Court, as it mentioned in its comments case for the New Hampshire governor. And so, you know, in deciding what is the appropriate period of time, there is that Supreme Court precedent, there's the precedent that a two year period is de minimis. And in Miller, there was not only a lifetime look back, but there's a lifetime ban going forward. And this court upheld that what is the basis of the six years in this case? Well, I don't, unfortunately, I everyone set me up to have a good answer that I can give you, you know, it is within the realm of the what the types of limits the Supreme Court is upheld with respect to time limits. But it also is a judgment as to what is the appropriate level to get at the in this type of with respect to redistricting is just a different type of conflict than, you know, a legislator who has a investment that's affected by pending legislation. The Supreme Court has recognized in the Arizona Independent Redistricting Commission case that legislators and you know, partisan involvement is a conflict of interest. And so I don't think it's appropriate for the court to conceive of that conflict. And so narrow of a light that the don't plaintiffs have suggested. And so here, it really is, you know, both, there are, you know, monetary, you know, I think, Judge Radler, you had mentioned the lobbyists. Well, I think any lobbyist will tell you that whether or not they continue to be employed as a lobbyist or have clients depends on who's elected. And so they really do have a direct connection to the drawing of those lines. And I wanted to briefly touch on severability. The idea that the voters of Michigan, whose goal was to eliminate the legislators from being the ones who are doing this, the idea that if, if they were presented with the option to sever out the mother of the mailroom clerk would say, No, we want to guarantee that the legislators do it have the eliminate the possibility of one in 9000 applicant chance that the mother of a mailroom clerk gets one of the 13 seats. I think that that just doesn't, that strains credulity. And so the most important thing here is the level of scrutiny as this court held Michigan has a strong interest in choosing the qualifications of its high level officials. And for that reason, the decision below should be affirmed. Thank you, Mr. Birch. Thank you, Judge Moore. I want to start with Mr. Gaber's concession, though, about halfway through his colloquy there, that this case is definitely unique in that no case out there anywhere has ever proved prohibitions, anything like this. And I'm going to highlight two problems with respect to the state, state's interests, problems that again, could also be explored in discovery. The primary interest that the state has advanced here is that this policy reduces political influence and eliminates conflicts of interest. So consider each one of those. The reducing political interest influence is undermined by allowing city officials and judges and volunteers of political campaigns and unregistered lobbyists to all be eligible for the commission. So it is woefully under inclusive. That second interest eliminating conflicts of interest is undermined by not disqualifying for disqualifying for actual conflicts, as in the Nevada commission case, we would have no problem with that, but stereotyped conflicts that are over and under inclusive, especially when you consider the six year period. You know, again, the Nevada commission case would be a perfect rule to apply in a case like this one. If you have an identified candidate who applies for the commission and they have an actual conflict in that they or a close relative is going to benefit directly from the line drawing, then of course they should be out. But this proposal doesn't look anything like that, you know, whether it's the mailroom clerk or many of the other hypotheticals that we advance. You know, some townships in Michigan are as small as 10 people. If you had a parent or a son or a daughter or an ex spouse who happened to be the clerk in that township because they needed someone to do clerk like stuff and they weren't partisan at all, you would still be excluded. So the fit between the interests that are being alleged and the proposal that was actually put on the ballot and adopted don't fit at all. And that's why we don't have a case like this anywhere. Oh, suppose you won. What would happen then? The amendment would be declared unconstitutional and the state would go back to the legislators doing the redistricting? I mean, it would until you could put together another ballot proposal that was constitutional and didn't penalize anyone for these attenuated interests that don't have anything. Time-wise, redistricting will occur assuming that Michigan changes the number of members of Congress. Redistricting needs to occur almost immediately, doesn't it? As soon as the census figures are released? That is correct. Right. So that you are basically saying, although 60% of the people of Michigan voted to change fundamentally the system, and although Rucho even mentioned the Michigan constitutional amendment as a way to deal with gerrymandering, whereas the federal courts weren't going to get involved, you're saying for this next 10 year period, Michigan would not be able to do what the voters of Michigan wanted to do? I would say slightly differently. I would say that 60% of voters voted for an unconstitutional amendment to our state constitution that has to be set aside. Yes, that means that we would return to the legislature drawing the lines in the next cycle, but by the time we got to the cycle after that, it's entirely plausible that we would have a different constitutional system in place. I don't think that the Supreme Court in Rucho was endorsing specifically the every dot and letter of this particular proposal, but rather the concept of redistricting commissions. And if that redistricting commission process is pursued in a constitutional way, then there's nothing wrong with allowing the people to use that as a mechanism for line drawing. The problem here is that the proposal that was put forward was skewed. If we accepted your view that the familial provision is overbroad or underinclusive or than necessary, but that the Supreme Court had said a two-year was de minimis, could we order those provisions to be severed and the rest of the amendment to remain? Well, we've advanced the severability argument in the brief, and I referenced it briefly before. I don't think you can do that, but what I hear you suggesting is that maybe you could kind of or something like that. And I don't think that's a power that this court has. We have no idea what the people would have thought about a proposal that included a two-year proposal or that didn't have any look back at all. The problem with state referenda is that all we know is that they voted yes or no on this particular proposal. It's an all or nothing situation. That's our view, yes. And I see that I'm out of time unless there are any further questions. I don't see any further questions. Thank you all for your argument. The case will be submitted.